UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


JEROME S. COLLEY, SR.,           :
                                 :
          Plaintiff,             :    NO. 1:09-CV-00345
                                 :
                                 :
     v.                          :    **FINDINGS OF FACT,**
                                 :    **CONCLUSIONS OF LAW**
                                 :    **AND ORDER**
REBECCA LYNN REISERT, et al.,    :
                                 :
          Defendants.            :



     This matter is before the Court for decision following a
bench trial conducted on November 23, 2010.  In rendering its
decision on this matter, the Court has considered the testimony of
the witnesses, the documents admitted into evidence, the parties'
trial briefs (docs. 68, 70), Intervening Defendant State Automobile
Mutual Insurance Company's (hereinafter "State Auto") Proposed
Findings of Fact and Conclusions of Law (doc. 69), and Plaintiff's
Proposed Findings of Fact and Conclusions of Law (doc. 71).  For
the reasons indicated herein, the Court ENTERS Declaratory Judgment
in favor of Plaintiff, FINDS that Dorothy Crane was the owner of
the 1986 Wellcraft Scarab Panther speed boat, FINDS that State
Auto's policies provided coverage for the May 30, 2008 accident,
and CONTINUES this matter for a hearing on damages.

     In weighing the testimony of the witnesses, the Court
evaluated the credibility of each witness, their interest in the

outcome of the trial, their manner of testifying, and the extent to which such testimony was supported or contradicted by other credible evidence. Under Fed. R. Civ. P. 52, the Court has set forth its findings of fact and conclusions of law in Sections II and III, below.

## I.  Background

This matter involves a dispute over whether Intervening Defendant State Auto policies held by Dorothy Crane provide liability coverage for a tragic speedboat accident on May 30, 2008 that killed both Plaintiff's son, Jerome J. Colley, Jr., and Crane's son Rudolph Crandall (doc. 1).  State Auto seeks declaratory judgment that it has no duty to defend or indemnify the Estate of Rudolph Crandall under Crane's policies for any damages alleged by Plaintiff individually and as Administrator of the Estate of Jerome J. Colley, Jr. (doc. 32).  For purposes of this declaratory judgment action, State Auto takes Plaintiff's Complaint as true, and therefore does not challenge whether Rudolph Crandall was piloting the boat at the time of the accident.[1]  Rather, the parties dispute whether Dorothy Crane, who held title to the boat, was actually the owner of the boat.  If Crane is found to be the owner, the parties further dispute whether Crane's State Auto

---

[1]The parties further do not dispute that the accident occurred in Ohio waters, as indicated by the boat's G.P.S. coordinates at the time of the accident, and agree that Ohio law governs this matter.

Umbrella policy was triggered by necessary underlying coverage, and whether certain policy exclusions apply.

At the November 23, 2010 bench trial the Court heard the testimony of Dorothy Crane, Crane's daughter Rebecca Reisert, and State Auto Insurance Agent Norm Schmid (doc. 67).  Crane testified that she considered the boat property of her Son Rudolph Crandall and that she only held title to the boat "as a favor for him, because the boat was a special thing for him," but that she exercised no control over the boat, did not pay taxes on it, or otherwise maintain the boat.  Crane further conceded that she signed an affidavit claiming ownership of the boat in Case No. 1:09-CV-00831 in her Complaint for Exoneration From Or Limitation of Liability, but that she did so under "duress."  There is no dispute that Crane held the title for the boat, and even at one point re-applied for a title when the original was misplaced.

Although both Crane and her daughter further testified that they never intended for the boat to be covered by Crane's insurance with State Auto, evidence in the record showed Crane had a phone conversation with Carla Conner of Norm Schmid's company at a time preceding the accident, and that State Auto had a copy of Crandall's underlying State Farm Insurance policy status, dated June 15, 2004, complete with a description of the Scarab Panther and its horsepower.  A handwritten note on such document states, "Attn: Carla, Insured Dorothy Crane titleholder, Son drives and

3

insures boat.  Per NES [Norman Schmid]–told insured urgent to get boat out of her name." There is no dispute that Crane and Schmid both signed an application for Umbrella Insurance on June 15, 2004, such that Schmid's insurance company knew about the boat from the inception of the policy.  The facts show that State Auto repeatedly renewed its insurance with Crane, who retained title to the boat up until the time of the accident.

Plaintiff's counsel proffered State Auto's June 5, 2009 Reservation of Rights letter to Dorothy Crane, which on page 49 indicates that it viewed Crandall's State Farm insurance policy on the boat as an "underlying policy."[2]  Plaintiff's counsel further queried Norm Schmid about the umbrella policy provision exclusion for watercraft liability, Section II.B.1.(2)(d), which excludes coverage for boats in excess of "25 horsepower if the outboard engine or motor is owned by an 'insured'" unless the horsepower is declared at the inception of the policy.  Schmid testified that in his view, the horsepower exclusion only applied to outboard motors, and the Scarab Panther was an "inboard/outboard" type of boat.

---

[2]The Umbrella policy defines underlying insurance as "any policy providing the 'insured' with primary liability insurance covering one or more types of liability listed in the Declarations or Endorsement attached to this Policy and that at limits no less than the retained policy limits shown for those types of liability listed in the Declarations of Endorsement to the attached policy."  An insured is further defined "any person using an. . .watercraft, which is owned by you and covered under this policy."

4

In its briefing, State Auto contends the Ohio Supreme Court has held that certificate motor vehicle law is essentially irrelevant to the issue of ownership, which should be determined by the Uniform Commercial Code (doc. 68, <u>citing</u> <u>Smith v. Nationwide Mut. Ins. Co.</u>, 37 Ohio State 3d 150 (Ohio, 1988)). In State Auto's view, regardless of the fact that Crane held title to the boat, there is no dispute that Crandall purchased the boat, specifically insured it, and exercised complete control over it. As such, State Auto contends the Court should determine that Crandall was the owner, which would eliminate any potential claim to Crane's insurance coverage.

Plaintiff responds that for the Uniform Commercial Code to apply, there would have to be a sale, bailment or security interests of or in goods (doc. 70). Plaintiff contends there is no contested sale here, no bailment, and no security interest issues so that Defendant's cited autority is inapplicable (<u>Id</u>.). According to Plaintiff, Ohio Revised Code § 1548.04 controls, and it provides:

> No court in any case at law or equity shall recognize the right, title, claim, or interest of any person in or to any watercraft or outboard motor sold or disposed of, or mortgaged and encumbered, unless evidence: A. By a certificate of title or a manufacturer's or importer's certificate issued in accordance with Chapter 1548 of the Revised Code.

O.R.C. § 1548.04 (2010). As Crane held title to the boat, and even admitted so by sworn affidavit in this Court, Plaintiff argues

Crane is the owner.

Having reviewed this matter, the Court finds Plaintiff's position correct that Ohio law shows that Crane, who held title to the boat, was the owner. O.R.C. § 1548.04. Defendant's reliance on the Uniform Commercial Code is misplaced. This matter does not involve a sales transaction in which the boat was physically delivered while a certificate of title was not. Here, there is no question that Crane intentionally held the certificate of title for years, so as to benefit her Son. Such action holds legal consequences. Crane was the owner of the boat.

The Court further finds that Crandall's State Farm Insurance coverage for the boat, and Crane's State Auto Homeowner's Policy constitute "any" insurance for purposes of the Umbrella Policy, and therefore meet such policy's requirement for "underlying" insurance. Finally, the evidence shows that Schmid knew about the boat, and instructed that Crane get the title out of her name. That never happened. Such action also holds legal consequences. The exclusion is inapplicable such that State Auto's policies properly cover the boat.

Finally, the Court rejects Schmid's theory that the exclusion's language only applies to outboard motors. Section II.B.1.(2)(d)'s language is difficult to decipher, but it refers to "outboard engine" OR "motor," which does not explicitly exclude inboard motors or combinations. To the extent such language is

6

ambiguous, the Court properly construes it against the insurer. Moorman v. Prudential Ins. Co., 4 Ohio St. 3d 20, 22 (Ohio, 1983).

## II. Findings of Fact

Having summarized the general background and its conclusions, the Court now proceeds to specify its factual findings. The Court finds those proposed by Plaintiff essentially correct, and therefore adopts such findings, as follows:

1. On August 27, 1997, Dorothy Crane ("Crane") acquired title to a 1986 Wellcraft Scarab Panther with twin Mercruiser 454 engines with horsepower of 330 each ("Watercraft"). Dorothy Crane applied for and obtained the State of Ohio Watercraft Certificate of Title because of marital difficulties of her son Rudolph Crandall ("Crandall") in his efforts to prevent his wife, and other creditors, from having access to the asset the Watercraft represented.

2. Crane was the Watercraft Title Owner from August 27, 1997 up to and including May 30, 2008, and, as such, filed applications for and obtained the Ohio Registration for Watercraft #OH-952-CF from the Ohio Department of Natural Resources ("ODNR").

3. On May 30, 2008, the Watercraft was operated at a high rate of speed, causing the Watercraft to become airborne and ejecting Jerome J. Colley, Jr. ("Colley") and Crandall, both of whom died as a result of their injuries sustained by blunt force

7

trauma and drowning ("Occurrence").

4.  On November 12, 2009, with the advice and assistance of her attorney at law, Todd Powers, Crane filed a Complaint for Exoneration From or Limitation of Liability ("Complaint") and executed an affidavit confirming her ownership of the 29 foot white Wellcraft Scarab racing boat in the United States District Court for the Southern District of Ohio, in case number 1:09-CV-00831.

5.  Pursuant to the Complaint, this Court issued Orders determining Crane as the owner of the Watercraft and ordered a notice to be published which, additionally, identified Crane as the owner.

6.  At the time of the Occurrence, Crandall had a policy of insurance with State Farm Insurance Company ("State Farm"), Policy 35-GO-5747-6, providing Crandall with primary liability insurance for the "maintenance or use" of the Watercraft with liability limits of $300,000.00.

7.  Since the acquisition of the Watercraft, Crane had a Homeowner's Policy with State Auto, Policy HOH451624 issued by the Huesman-Schmid Insurance Agency through its principal and agent, Norb Schmid ("Schmid") with liability coverage of $500,000.00 for each occurrence which provided coverage for ownership of a "Watercraft."

8.  On or about June 15, 2004, Carla Conner, a service agent for

Schmid, discussed with Crane her ownership as title holder of a boat that her son drives and insures, being the same Wellcraft Scarab Panther involved in the Occurrence.

9.  On the same date, June 15, 2004, Crane and Schmid both signed the application for Umbrella Insurance, which Umbrella and underlying Home Owner's Insurance was renewed each year thereafter up to and including May 30, 2008, the date of the Occurrence.

10.  Schmid, having obtained and Crane having provided the information regarding her ownership and her Son's use and maintenance of the Watercraft and, thereafter, issuing policies of insurance, became the agent of State Auto and the knowledge of such ownership and its two Mercruiser 454 engines with horsepower of 330 each was imputed to State Auto.

11.  Beginning in 2004, and continuing up to and including the date of the Occurrence, the Umbrella provided coverage for the Watercraft owned by its insured, Crane, when used by Crandall, with the insured's permission.

12.  Crandall's State Farm Policy and Crane's Homeowner's Policy provided the "underlying insurance" as required by State Auto's Umbrella Policy.

13.  Since obtaining title to the Watercraft, Crandall had Crane's permission to use and maintain the Watercraft including at the time of the Occurrence on May 30, 2008.

9

## III.  Conclusions of Law

The Court further adopts Plaintiff's conclusions of law, based on the foregoing facts:

1.  Dorothy Crane was the owner of the Watercraft involved in the Occurrence in which Jerome Colley died.

2.  At the time of the Occurrence Rudolph Crandall was using the Watercraft with the permission of Crane.

3.  At the time of the Occurrence Crandall had in full force and effect a liability policy insuring him for the maintenance and use of the Watercraft.

4.  At the time of the Occurrence, Dorothy Crane had in full force and effect a Home Owner's Policy of Insurance with liability limits of $500,000.00 which Policy provided coverage for the use of the Watercraft owned by its insured, Crane.

5.  At the time of the Occurrence, Dorothy Crane had in full force and effect an Umbrella Policy of $1,000,000.00 which provided coverage for the use of the Watercraft owned by Crane.

6.  The policies of liability of Crane and Crandall constitute "underlying insurance" as that term is used in Crane's Umbrella Policy with State Auto.

7.  Norm Schmid and Huesman Schmid Insurance Agency (collectively "Schmid") was the agent of both State Auto and Dorothy Crane at all times relevant to the action underlying this Declaratory Judgment and the information received by Schmid

10

regarding the ownership and 330 H.P. of each of the Mercruiser engines was imputed to State Auto and this knowledge became that of the insurer.

8.    Schmid as the agent of State Auto, provided Crane with the Homeowner and Umbrella Policies of Insurance.

9.    The information regarding the ownership and horsepower of 330 for each of the two Mercruiser engines was obtained by Schmid on or about June 15, 2004, and was imputed to State Auto for the Umbrella Policy issued in 2004 and the Homeowner's and Umbrella Policies renewed and issued thereafter up to and including those in existence at the time of the occurrence on May 30, 2008.

10.   The knowledge of the twin engine horsepower 330 each having been imputed to State Auto for the renewals of the Homeowner's and Umbrella Policies after June 15, 2004, rendered the exclusion for limited horsepower null and void.

## IV. Conclusion

WHEREFORE, the Court finds and DECLARES that at the time of the May 30, 2008 accident in which Jerome Colley Jr. was killed:

1.    Dorothy Crane was the owner of the Watercraft involved in such accident.

2.    State Farm Mutual Insurance Company had liability limit coverage of $300,000.00 for the maintenance and use of the Watercraft by Crandall at the time of the accident.

11

3.  State Auto had a Homeowner's Policy of Insurance with liability limits of $500,000.00 insuring the Watercraft owned by its insured, Dorothy Crane, and providing coverage for its permissive use by Rudolph Crandall at the time of the occurrence.

4.  State Farm Insurance Company and State Automobile Mutual Insurance Company policies are underlying insurance as defined by the Umbrella Policy issued by State Automobile Mutual Insurance Company to Dorothy Crane on June 15, 2004 and renewed, thereafter.

5.  State Auto's Umbrella Policy issed to Dorothy Crane containing liability limits of $1,000,000.00 was in full force and effect at the time of the accident and provided coverage for Crandall's permissive use of the Watercraft.

    In accordance with the Court's findings and declaration of coverage, the Court finds it appropriate to set this matter for a hearing on damages, to take place February 2, 2011, at 2:00 P.M.


    SO ORDERED.

Dated: January 5, 2011          /s/ S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge